UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
                                       )

MIREYA RIVERA,                    )

                Plaintiff,      )

        -against-         )     10 Civ. 6013 (JSR)

LINDA A. STRUMPF and JOHN L. LOMBARDI,   )

           Defendants.     )

---------------------------------------------------------- x

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE RELIANCE ON IMPROPERLY DESTROYED EVIDENCE

LEGAL SERVICES NYC – BRONX
*Attorneys for Plaintiff*
By Anne Nacinovich (AN – 6586)
579 Courtlandt Avenue
Bronx, N.Y. 10451
Telephone: (718) 928-3739
Facsimile: (718) 402-7566

NORTHERN MANHATTAN
IMPROVEMENT CORPORATION
*Attorneys for Plaintiff*
James M. Baker (JB-7115)
76 Wadsworth Ave
New York, N.Y. 10033
212-822-8347

**Table of Contents**

Table of Contents ........................................................................................................ 2

Table of Authorities .................................................................................................... 3

Preliminary Statement ................................................................................................ 4

Procedural Background ............................................................................................... 4

Facts ........................................................................................................................... 7

Argument .................................................................................................................. 10

    POINT 1 ............................................................................................................... 10
    The Defendants' Destruction Of Evidence They Knew To Be Material To The Issues In This Lawsuit Is Sanctionable Under FRE Rules 1004 And 1008 And The Spoliation Doctrine ..... 10

        A.   Defendants' Systematic Destruction Of Virtually All Written Documentation Concerning The Civil Court Case Raises Significant Credibility Issues .............................. 10

        B.   Defendants' Destruction Of All Records Relating To Court Appearances Attended By Rivera Seriously Impedes Rivera's Ability To Prove Her Case ......................................... 11

        C.   The Court Should Bar Defendants From Offering Secondary Evidence Of In-Court Transactions Between Lombardi And Rivera Under FRE Rule 1004 .................................. 13

        D.   The Court Should Employ The Spoliation Doctrine To Sanction Defendants For Destroying Critical Evidence ......................................................................................... 15

    POINT 2 ............................................................................................................... 19
    The Court Should Sanction Defendants' Destruction Of Evidence By Directing A Default Judgment Against Them Or By Imposing Such Lesser Sanction As The Court Finds Warranted ................................................................................................................................. 19

    CONCLUSION ....................................................................................................... 23

## Table of Authorities

### CASES

*Agimal v. Mid Island Mortg. Corp.*, 555 F.3d 298 (2d Cir. 2009) ............................................ 21
*Byrnie v. Town of Cromwell*, 243 F.3d 93 (2d Cir. 2001) ...................................................... 16
*Flury v. Daimler Chrysler Corp.*, 427 F.3d 939 (11th Cir. 2005) .............................................. 22
*Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334 (D. Conn. 2009) ............................... 23
*Jones v. NFTA*, 836 F.2d 731 (2d Cir. 1987) ................................................................ 21
*Kronisch v. U.S.*, 150 F.3d 112 (2d Cir. 1998) ...................................................... 16, 17, 19
*National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639 (1976) .......................... 21
*SEC v. Merchant Capital, LLC*, 483 F.3d 747 (11th Cir. 2007) ............................................. 8
*Seiler v. Lucasfilm Ltd.* 808 F.2d 1316 (9th Cir. 1986) .................................................... 14
*Seiler v. Lucasfilm, Ltd.* 613 F. Supp. 1253 (N.D. Ca. 1984) ........................................... 14, 15
*Sellmayer Packing Co. v. Commissioner*, 146 F.2d 707 (2d Cir. 1944) ...................................... 15
*Silvestri v. GMC*, 271 F.3d 583 (4th Cir. 2001) ............................................................ 22
*Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107 (S.D. Fla. 1987) .................................. 21
*U.S. v. England*, 480 F.2d 1266 (5th Cir. 1973) ........................................................... 15
*United States v. O'Connor*, 237 F.2d 466 (2d Cir. 1956) ................................................... 15
*Valentine v. Museum of Modern Art*, 29 F.3d 47 (2d Cir. 1994) ............................................ 21
*West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776 (2d Cir. 1999) .................................. 16, 20, 21

### STATUTES

15 U.S.C. § 1692a(6) ....................................................................................... 7
15 U.S.C. § 1692k(c) ....................................................................................... 7
15 U.S.C. §§ 1692e and 1692f. ............................................................................ 13
26 U.S.C. § 6001 ......................................................................................... 17
26 U.S.C. § 6501(a) ...................................................................................... 17
Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA") ................................. 5, 6
Fed. R. Civ. P. 37. ...................................................................................... 16
FRE 1004 .............................................................................................. 14, 15
FRE 1008 ................................................................................................ 14
New York State General Business Law § 349 ("GBL § 349") ............................................. 5, 6, 13
New York State Judiciary Law § 487 ("NYJL § 487") .................................................. 5, 6, 13
Weinstein's Evidence Manual § 9.03[2] .................................................................... 14

### OTHER AUTHORITIES

7 Moore's Federal Practice § 37.120[3] .................................................................... 16
7 Moore's Federal Practice § 37.121 .................................................................. 16, 22
83 A.L.R. Fed. 554 ....................................................................................... 15
N.Y. Rules of Prof. Conduct, Rule 1.15(d)(1)(vi) ......................................................... 17

<u>Preliminary Statement</u>

Plaintiff, Mireya Rivera ("Rivera"), respectfully submits this memorandum of law in support of her motion, under Rules 1004 and 1008 of the Federal Rules of Evidence ("FRE"), and under the spoliation doctrine, to preclude defendants Linda A. Strumpf ("Strumpf") and John L. Lombardi ("Lombardi") from offering certain evidence at trial, or to impose other appropriate sanctions.

Discovery in this case is complete and has exposed Strumpf's and Lombardi's admitted, systematic destruction of virtually all written records pertaining to their representation of U.S. Equities Corp. ("USE") in a state court debt collection action against Rivera.  Rivera therefore asks the Court to preclude defendants from offering any evidence at trial respecting matters that might have been described in the destroyed documents, or otherwise sanction their conduct.

Should the Court determine that there are genuinely contested issues of fact relating to plaintiff's entitlement to relief, it can and should resolve those issues at a preliminary hearing held pursuant to FRE Rules 104(a) and 1008.

<u>Procedural Background</u>

Rivera filed the complaint in this case on August 10, 2010.  The case arises out of a debt collection suit brought in December 2006 by USE against Rivera in the Civil Court of the City of New York, Bronx County ("Bronx Civil Court") entitled *U.S. Equities Corp. v. Mireya Rivera*, Index N. 10541/06 (the "Civil Court case").  *See* Declaration of Anne Nacinovich dated April 14,

2011, Ex. A, p. 3.[1] USE claimed to have acquired title to a debt owned by Direct Merchants Bank arising out of a credit card transaction with Rivera. Ex. A - 3. Defendants Strumpf and Lombardi acted as the attorneys for USE. Ex. A - 3, 6.

Rivera contends that Strumpf and Lombardi violated the federal Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), New York State General Business Law § 349 ("GBL § 349"), and New York State Judiciary Law § 487 ("NYJL § 487") in the course of their representation of USE in the Civil Court case. Rivera charges two basic types of wrongdoing:

First, she charges that the defendants should have discontinued the Civil Court case as soon as it became apparent, as it quickly did, that they had in fact sued the wrong Mireya Rivera. Instead, despite knowing that Rivera, who was non-English-speaking and not represented by counsel, was not indebted to USE, defendants nevertheless continued to seek a judgment against Rivera on USE's behalf. Prior to finally obtaining counsel in the Civil Court case, Rivera was obliged to appear in Bronx Civil Court on nine separate occasions to defend against USE's claim. Defendants' conduct is claimed by Rivera to violate 15 U.S.C. §§ 1692d and 1692f. Ex. A - 7-9.

Second, Rivera claims that the defendants engaged in deceitful conduct in their representation of USE in the Civil Court case during the period when Rivera was unrepresented.

---

[1] Hereafter, the format for all citations to the record will be by exhibit and page number only. For instance, Exhibit A, page 1 to the Nacinovich declaration will be denoted simply as "Ex. A - 1."

Rivera claims that such conduct violates 15 U.S.C. § 1692e, GBL § 349, and NYJL § 487. A8-

10. As alleged in the complaint, this conduct consisted of the following:

- On two occasions, Strumpf obtained significant relief by default in the Civil Court case by the expedient of not serving motion papers on her *pro se* adversary. In July 2009, Strumpf secured a court order vacating a judgment *against* USE that had been awarded in 2007 when Strumpf herself had defaulted on a court appearance. Rivera never had an opportunity to oppose this application. In September 2009, Strumpf obtained an order granting summary judgment against Rivera when Rivera did not appear in court in opposition to USE's motion. Rivera was able to secure relief from the judgment only by bringing a *pro se* order to show cause by which she established that she had not received USE's motion papers. Ex. A - 4, 6-7.

- In moving for summary judgment against Rivera, defendants submitted false documentation in an effort to establish that USE had lawfully acquired ownership of the debt from Direct Merchants Bank, the creditor with whom the actual debtor had entered into a credit card agreement. The purported "bill of sale" between Direct Merchants Bank and USE was in fact between another entity, "Turtle Creek Assets" and USE, and was dated September 25, 2008, that is, 21 months after USE had sued Rivera. Ex. A - 4-5.

- Defendants also submitted to the Bronx Civil Court, as part of USE's motion for summary judgment, a "Lexis-Nexis" report which they wrongly claimed (a) was a report concerning Rivera and (b) linked Rivera to the address where the person indebted to USE resided. The report was done on someone else, and the address link to Rivera had been created by USE's suit against Rivera, and the errors remained uncorrected. Ex. A – 5.

- Also as part of USE's summary judgment motion, defendants submitted an affidavit by Wing Lam, USE's accounts manager, in which Lam claimed to have personal knowledge of the transaction between USE and Rivera based on "books and records" in his possession. The affidavit was false and deceptive because Lam had no personal knowledge of the purported dealings between Direct Merchants Bank and Rivera; he was in fact incompetent to give evidence of those transactions; and his conclusions were disproved by the documents attached to his affidavit. Ex. A 5-6.

Defendants answered the complaint on October 18, 2010, denying its essential factual

allegations and raising various affirmative defenses, including the "*bona fide* error" defense of 15 U.S.C. § 1692k(c).  Lombardi raised an additional defense that he was not a "debt collector" within the meaning of 15 U.S.C. § 1692a(6).  Strumpf concedes that she is a debt collector.  Ex. B - 1-8.

<u>Facts</u>

Rivera is a Bronx resident and a monolingual Spanish speaker.  She earns her living as a self-employed hair dresser.  It is undisputed that she has never had any financial dealings with Direct Merchants Bank or USE.  The person who contracted the original indebtedness to Direct Merchants Bank was a different Mireya Rivera.  Ex. A – 1; Ex. B - 6; Ex. C - 9-10.

Strumpf is an attorney licensed to practice law in New York, New Jersey, and Connecticut.  Ex. D - 154.  She is a sole practitioner.  Ex. D - 5.  Her principal office is in Connecticut, where she currently has 4-5 non-attorney employees.  Ex. D - 5, 18-19.  Debt collection cases arising from consumer credit transactions comprise 75-80% of her practice.  Ex. D - 20.

She was unable to estimate the number of cases she filed in New York in recent years, and does not keep records.  Ex. D - 23-24, 25.  New York State Court records, available online, show that in 2006 the case against Ms. Rivera was one of the 176 Strumpf filed on behalf of USE in Bronx County Civil Court alone.  NYS Unified Court System, ecourts records available at http://iapps.courts.state.ny.us/webcivil/ecourtsMain (accessed January 9, 2011); and Ex. E – 2-16.

Strumpf receives USE cases "in bulk" in the form of a spread sheet e-mailed to her from

the original creditor. Ex. D - 27-28, 100.[2] Someone at USE notifies her when to expect a new "portfolio". Ex. D - 32-34. Strumpf has not produced any record tying Ms. Rivera to one of her portfolios. Ex. D – 101; Ex. F -1.

Lombardi makes all Bronx court appearances for Strumpf's debt collection cases. Ex. D - 116, 118. Strumpf pays him $100 per appearance for each case. Ex. G - 76. Lombardi handled all court appearances for Strumpf in the Civil Court case against Ms. Rivera. Ex. J - 2.

When Strumpf wants Lombardi to appear on a case she sends him a fax containing complete instructions for the court appearance. Ex. D - 116, 118, 121; Ex. G 16-17.[3] There are no standing instructions; everything is handled on a case-by-case basis. Ex. D - 118. Lombardi is supposed to telephone Strumpf if he needs additional instructions but Strumpf and Lombardi do not generally speak by telephone. Ex. D - 119-20; Ex. G - 19-20, 29, 81. In fact, Strumpf could not recall an instance in which she had spoken by telephone to Lombardi about a Bronx case. Ex. D - 120, 160. Essentially all communications are written. Ex. D -117. Lombardi sends a bill to Strumpf following each court appearance. Ex. D - 123-24. The bill contains his report of what transpired in court on the case; he does not report to Strumpf in any other manner. Ex. D - 123-24, 126.

Neither Strumpf nor Lombardi had any independent recollection of what transpired in

---

[2] USE is what is known as a "debt-buyer," an entity that makes bulk purchases of defaulted consumer debt from original creditors or other debt buyers. *See generally, SEC Merchant Capital, LLC,* 483 F.3d 747, 750-51 (11th Cir. 2007); Federal Trade Commission, *Collecting Consumer Debts: The Challenges of Change,* available at www.ftc.gov/bcp/workshops/debtcollection/dcwr.pdf (accessed April 10, 2011).

[3] In his testimony, Lombardi stated that he may also get e-mails from Strumpf, and that, if he is to argue a motion, Strumpf will send him the motion papers via Fed Ex or overnight mail. Ex. G - 16, 23-24.

Bronx Civil Court on any of the nine occasions when Lombardi appeared on behalf of USE and

Rivera appeared *pro se*. Ex. D - 25, 52, 72, 122; Ex. G 44, 47-54, 59-62, 66. Specifically,

neither remembered whether Rivera had, or had not, provided Lombardi with documentation that

she was not the person indebted to USE. Ex. D - 122; Ex. G - 62, 71-73. Both testified that it

was the normal practice for Lombardi to give Strumpf any material received from a defendant

during a court appearance. Ex. D - 122; Ex. G - 25-26. Both Strumpf and Lombardi were asked

for their records related to the USE case against Rivera. Ex. H - 4-5; Ex. I - 4-5. In response,

Lombardi produced nothing and Strumpf produced two partial pages. Ex. J – 5, 6, 12, 65-66.

The defendants' stated document retention practices are as follows: Strumpf keeps no

contemporaneous notes of what happens in her cases. Ex. D - 60.[4]  Strumpf does not make

copies of the faxes she sends to Lombardi containing her instructions to him for court

appearances. Ex. D 116-17, 118. Lombardi destroys his copies of those faxes immediately after

the court appearance to which they relate. Ex. G - 23-24. If he has received e-mails from

Strumpf, he destroys them within 30 days. Ex. G - 77. Lombardi keeps no personal records of

his court appearances for Strumpf. Ex. G - 85. He communicates the results of court

appearances to Strumpf by describing them in the bill he sends to her following the appearance.

Ex. G - 79-80. He destroys his own copy of his bills immediately upon getting paid, typically a

week later. Ex. G - 77, 86. Strumpf destroys her copies of Lombardi's bills at the end of the

calendar year. Ex. D - 127, 178-79. Accordingly, at the time of her deposition conducted on

January 11, 2011, she had no Lombardi bills for the years 2006-2009. Ex. D - 127.

---

4 Strumpf's testimony that she kept no notes was not accurate – she did produce 5 lines
of notes as her entire record on the Rivera case (page 65 of Ex. J). These notes do not reveal

At that deposition, Strumpf testified that she did still possess all the Lombardi bills from 2010, including Lombardi's descriptions of what transpired during 2010 court appearances.  Ex. D - 127, 135-36.  This was consistent with her claim that she retained Lombardi's bills through the end of the year in which they had been written.  Plaintiff's counsel asked that the 2010 bills be produced, and Strumpf agreed to produce them.  Ex. D – 136; Ex. L -1.  Subsequently, however, Strumpf's counsel informed plaintiff's attorneys that Strumpf did not in fact possess any of the Lombardi bills from 2010. Ex. F - 1.5  Strumpf offered no explanation of how and why these records had ceased to exist.

<u>Argument</u>

POINT 1

THE DEFENDANTS' DESTRUCTION OF EVIDENCE THEY KNEW TO BE MATERIAL TO THE ISSUES IN THIS LAWSUIT IS SANCTIONABLE UNDER FRE RULES 1004 AND 1008 AND THE SPOLIATION DOCTRINE

A.    DEFENDANTS' SYSTEMATIC DESTRUCTION OF VIRTUALLY ALL WRITTEN DOCUMENTATION CONCERNING THE CIVIL COURT CASE RAISES SIGNIFICANT CREDIBILITY ISSUES

Initially, it must be owned that there is something implausible about the defendants' claim that they destroy their own records of their activities virtually in real time.  Strumpf faxes instructions to Lombardi and, simply by not retaining a copy, instantly erases her own record of what she has asked him to do.  Lombardi likewise, immediately on completion of his assignment,

---

anything about what materials were brought to Bronx Court or shared with Lombardi.

5 Plaintiff's counsel also asked Lombardi to make the same production, and he agreed to look, but in the end had nothing to produce.  Ex.G - 86-88; Ex. F -1.

destroys his only record of what Strumpf asked him to do and, approximately one week later, his only record of what he did. Strumpf, as well, albeit somewhat more slowly, eliminates, at the end of each year, her only record of what transpired in court, even for cases that are still pending. As a result, both defendants claim not to possess any written record of what transpired during all nine of Rivera's court appearances in the Civil Court case.

It is difficult to see how defendants' record retention system operates in practice. A case is scheduled for, say, January 15th. Strumpf looks at her file to see what happened last time. There is no record. Did the judge ask Strumpf to do anything? There is no record. Did the debtor bring in documents showing uncredited payments? There is no record. Did the debtor claiming mistaken identity promise to bring in proof? There is no record.

It may be that Strumpf simply does not need contemporaneous notes or other written records in order to run an effective, high volume, collection practice, relying on her memory instead. Or it may be that Strumpf simply operates her practice at a relatively low level of efficiency. But the possibility remains - and in plaintiff's view it is a substantial one - that the defendants' actual record retention practices were different from those described in their deposition testimony. In other words, there is a substantial likelihood that defendants in fact possess records they have failed to disclose, and/or that defendants have destroyed records to prevent their disclosure.

B.   DEFENDANTS' DESTRUCTION OF ALL RECORDS RELATING TO COURT APPEARANCES ATTENDED BY RIVERA SERIOUSLY IMPEDES RIVERA'S ABILITY TO PROVE HER CASE

This case is a dispute about what transpired between Rivera and the defendants during the

course of a civil suit brought by Strumpf on behalf of USE during the period between December 2006, when the Civil Court action was filed, and May 2010, when Rivera secured legal representation. A few of those interactions took place through the mail. Most of the significant interactions, however, took place in court between Lombardi, who insists he has no recollection of any of them, and Rivera, whose word is therefore at issue.[6] The defendants' destruction of their records of the case has therefore eliminated evidence that is, at least in potential, highly probative.

This is most obviously true with respect to Rivera's claim, as detailed in the complaint and in her deposition testimony, that she repeatedly presented documentary evidence to Lombardi demonstrating that USE had sued the wrong Mireya Rivera. The defendants have expressly denied in their answer that Rivera ever supplied this evidence prior to May 4, 2010. Ex. B - 4, ¶ 28. This is one of the central issues in this case. If Rivera is telling the truth, then confirmation must have existed in nearly every one of Lombardi's after-court memos to Strumpf beginning in August 2009.[7] The disappearance of those records has deprived Rivera of what was literally the best evidence of her claim.

The same is true even with respect to Rivera's claims that defendants' engaged in deceitful conduct. Rivera's most serious charge of deception is that Strumpf intentionally failed to serve Rivera with motion papers both when moving to vacate USE's own default in June 2009

---

[6] The Bronx Civil Court's record of the case has no transcriptions of the scheduled court sessions. Nacinovich Dec. at ¶ 2.

[7] Both Strumpf and Lombardi, though disavowing any specific recollection of the events, testified that, if Rivera had presented documentation to Lombardi, Lombardi would have transmitted it to Strumpf. Ex. D - 122; Ex. G - 25-26.

and when moving against Rivera for summary judgment in August 2009.[8] If proven, this charge would constitute grave misconduct by an attorney, and would unquestionably violate 15 U.S.C. §§ 1692e and 1692f, as well as GBL § 349 and NYJL § 487.

The missing records contain important evidence relevant to this charge: Strumpf made the summary judgment against Rivera returnable on September 15, 2009. Ex. D - 77. Asked at her deposition why she had not simply noticed the motion for August 27, 2009, when there was already an appearance scheduled by the court that Rivera would be attending, Strumpf replied that, when she filed the motion, there was not enough time remaining to make it returnable on the 27th. Ex. D - 77-78.[9] She then added that, to insure Rivera's receipt of the motion papers for September 15th, *she provided an extra copy to Lombardi to give to Rivera in court on August 27th*. Ex. D - 95-96, 168-69, 180.[10] If Strumpf was untruthful, it goes far toward establishing the validity of Rivera's claim that Strumpf deliberately failed to serve the motion papers. Proof one way or the other was contained in Strumpf's written instruction to Lombardi preceding the August 27th court date. Both defendants have destroyed their copy of that document.

C.    THE COURT SHOULD BAR DEFENDANTS FROM OFFERING SECONDARY
      EVIDENCE OF IN-COURT TRANSACTIONS BETWEEN LOMBARDI AND

---

[8] On both occasions, the affidavit of service was completed by Hal Siegel, Strumpf's husband and sometime part-owner of USE. Ex. D – 104 – 06; Ex. K 1 – 2. Plaintiff requested documents related to Siegel's ownership of USE and Strumpf agreed to produce them, then later said they did not exist. Ex. D. – 107; Ex. F - 1.

[9] This was inaccurate. Strumpf served the motion by mail on August 12, 2009. Ex. D - 77. The CPLR requires mailing 13 days in advance of the return date. NYCPLR Rules 2214(b) and 2103(b)(2).

[10] First Strumpf testified that this was her invariable practice. Subsequently, she asserted that she had instructed Lombardi to do so.

RIVERA UNDER FRE RULE 1004

As noted, the best evidence of whether Rivera provided documentation of mistaken identity to Strumpf through Lombardi was contained in written materials independently destroyed by both defendants. Defendants must therefore rely on secondary proof of non-receipt in order to present any evidence on this subject. Defendants apparently plan to do so in the form of testimony that, had Rivera provided documentation, it would have been their standard policy and practice to act upon it promptly.

FRE Rule 1004 provides that secondary evidence of the contents of writings that have been lost or destroyed are admissible "unless the proponent lost or destroyed them in bad faith." FRE 1004(1). The burden of proving lack of bad faith is on the proponent. Weinstein's Evidence Manual § 9.03[2]. The question of bad faith *vel non* is normally one for the court to determine in the first instance. FRE 1008.

A leading case - indeed, one of a handful of reported decisions on the issue - is *Seiler v. Lucasfilm, Ltd. ("Seiler")*, 613 F. Supp. 1253 (N.D. Ca. 1984), *aff'd* 808 F.2d 1316 (9th Cir. 1986) ("Seiler"). The plaintiff sought to offer into evidence "reconstructions" of artistic designs created by him which he claimed the film maker had utilized in the movie "The Empire Strikes Back." He asserted that all traces of the original artwork had been destroyed in a flood. *Seiler*, 613 F. Supp. at 1255-56. Finding the plaintiff's account "peculiar" and "suspicious," the Court ruled that the burden was on plaintiff to show that it was "more probable than not" that the original evidence had in fact been destroyed innocently, and that, absent such a preliminary showing, the question could not go to the jury. *Seiler*, 613 F. Supp. at 1260-62. The Court's decision on both points was affirmed by the Ninth Circuit. *Seiler*, 808 F.2d 1316 at 1319-21.

14

Two Second Circuit cases have excluded secondary evidence under roughly comparable circumstances, *albeit* under earlier versions of the rule or common law. *United States v. O'Connor*, 237 F.2d 466, 475 (2d Cir. 1956); *Sellmayer Packing Co. v. Commissioner ("Sellmeyer")*, 146 F.2d 707, 710-11 (2d Cir. 1944). The *Sellmayer* Court stated that the proponent of the secondary evidence must show that there was "no reasonable probability that it has been designedly withheld or suppressed." *Sellmayer*, 146 F. 2d at 710. *See also U.S. v. England*, 480 F.2d 1266 (5th Cir. 1973); *see generally Federal Rules of Evidence:* admissibility, pursuant to Rule 1004(1) of other evidence of contents of writing, recording, or photograph, where originals were allegedly lost or destroyed, 83 A.L.R. Fed. 554.

Here, defendants cannot show that it was "more probable than not," *Seiler*, 613 F. Supp. at 1262, that their joint destruction of all of their communications about the Civil Court case while that case was in progress was innocent nor can they show "no reasonable probability that [the evidence] has been designedly withheld or suppressed." *Sellmayer*, 146 F.2d at 711. The Defendants run law practices, and lawyers keep records. Lawyers who have hundreds or thousands of small cases to keep track of especially *must*, as a practical matter, keep some records. The Court should rule that defendants' unexplained destruction of the records every attorney needs in order to conduct a law practice precludes them from introducing secondary evidence relevant to plaintiff's claims.

D.  THE COURT SHOULD EMPLOY THE SPOLIATION DOCTRINE TO SANCTION DEFENDANTS FOR DESTROYING CRITICAL EVIDENCE

Related to FRE 1004 is a legal doctrine concerning destruction or spoliation of evidence by a party to a case. A litigant seeking to impose sanctions for spoliation must generally

establish three elements: (1) that the party destroying the evidence had a duty to preserve it at the time of destruction; (2) that the records were destroyed with a "culpable" state of mind; and (3) that the evidence was relevant to a claim or defense of the party seeking sanctions. *Byrnie v. Town of Cromwell*, 243 F.3d 93, 107-08 (2d Cir. 2001); *Kronisch v. U.S.*, 150 F.3d 112, 126-27 (2d Cir. 1998). *See generally* 7 Moore's Federal Practice § 37.121. If the act of destruction occurred during the course of the litigation, the court's power to award sanctions derives from Rule 37, Fed. R. Civ. P. 37. If earlier, the court may rely upon its inherent authority. *See* 7 Moore's Federal Practice § 37.120[3].

Two differences between the operation of FRE 1004 and the spoliation doctrine should be noted: First, although the burden of proof under Rule 1004 is on the party who destroyed the evidence, in spoliation cases it is on the party seeking sanctions. Second, although the only sanction available under FRE 1004 is to deny the evidence destroyer the right to offer secondary evidence, sanctions for spoliation can include outright dismissal (or outright default against a defendant), preclusion orders, and jury instructions to presume or permission to infer, that the missing evidence would have favored the opposing party. *West v. Goodyear Tire & Rubber Co.*, 167 F.3d 776, 779-80 (2d Cir. 1999).

It is clear that plaintiff has satisfied the second and third prongs of the three-part test: Defendants have admitted that their destruction of records was intentional. This is sufficient to establish the requisite "culpability." *Byrnie v. Town of Cromwell*, 243 F.3d at 109. As to the third prong, plaintiff has shown that the records destroyed by defendants undoubtedly contained proof -- favoring one party or the other -- relevant to plaintiff's claim that defendants knew she was the wrong Mireya Rivera, and to her claim that Strumpf deliberately failed to serve motion

papers on her *pro se* adversary. *See supra* pp. 13-14.

This leaves only the requirement of showing that the party destroying the evidence had a duty to preserve it at the time of destruction. This duty normally comes into being when a party has been sued, but also arises "when a party should have known that the evidence may be relevant to future litigation." *Kronisch v. U.S.*, 150 F.3d 112 at 126.

Here, interestingly enough, both Strumpf and Lombardi were subject to two different legal requirements to preserve Lombardi's communications to Strumpf independent of the spoliation doctrine. Lombardi's bills were records of his taxable income, and records of Strumpf's business expenses, which IRS regulations unmistakably mandate be retained by the taxpayer for a minimum of 3 years. *See* 26 U.S.C. § 6001, § 6501(a). In addition, the New York Rules of Professional Conduct also required Strumpf to maintain, for at least 7 years, "copies of all records showing payments to lawyers, ... not in the lawyer's regular employ, for services rendered or performed ..." N.Y. Rules of Prof. Conduct, Rule 1.15(d)(1)(vi). Defendants' violation of these requirements, although not, in itself, sufficient for spoliation purposes,[11] renders their claimed record-retention practices significantly less credible.

Two facts, then, require determination. The first is when should defendants have known that the destroyed records might be relevant to future litigation? As early as June 2, 2010, two weeks after Rivera had secured legal representation in the Civil Court case, Strumpf sought to have Rivera release her from future claims as a condition of discontinuing the Civil Court case.

---

[11] The Second Circuit has held that violation of a legal mandate to preserve, unrelated to the litigation, does not satisfy the third prong, except when the mandate was enacted for the benefit of a class to which the plaintiff belongs. *Byrnie v. Town of Cromwell*, 243 F.3d 93 at 109.

[Ex. B – 6 ¶ 50; and Ex. M -1.  As of April 2010, Strumpf acknowledged finally receiving from Rivera definitive documentation showing that she had sued the wrong individual and states in her answer that she would have discontinued the case then if she obtained a release.  Ex. D – 139 - 41 Answer 6 ¶ 50.  As early as January, 2010, Strumpf had in her possession a detailed affidavit from Rivera, prepared with the assistance of lawyers from a court-sponsored program, identifying that documentation, and stating that it would be made available in court.  Ex. D – 133 - 34.[12]  All of these events should have put a reasonable lawyer on notice that litigation was possible. Destruction of records after they occurred is sanctionable.

The second fact needing determination is when the records were destroyed.  Strumpf's testimony on this subject was that she destroyed Lombardi's post-appearance memos "after a year."  Ex. D - 127.  Plainly, she did not mean by this that she kept them for a year after the appearance date, because then, on the date this suit was commenced, August 10, 2010, she would still have had almost all of Lombardi's memos from the beginning of his participation in the case.[13]  Instead, she seems to have meant that she disposed of them after the close of the year to which they related.  In other words, Lombardi's 2009 bills/memos would have been destroyed at some point on or after January 1, 2010.

It is simply unlikely that this destruction occurred prior to Strumpf's learning that litigation was possible.  As noted above, Strumpf had notice of significant problems as early as the end of January 2010.  For her own business purposes, she must have needed to keep

---

[12] Strumpf acknowledged that she had to have received this document prior to March, 2010, although she had no record of when.  Ex. D - 133-34.

[13] Lombardi's first appearance as on July 29, 2009.  The second was on August 27, 2009. J2.

18

Lombardi's reports of events in late 2009 for at least a few months into 2010. *See supra* pp. 9-10. For tax purposes, she would have needed his bills as records of expenditures at least until she had filed her state and federal returns, perhaps as late as April 15, 2010 or, indeed, later.

Finally on this subject, whatever remote possibility there may be that defendants' destruction of the 2009 records was innocent, there can be no conceivable excuse for their apparent destruction of records from 2010. It is undisputed that Lombardi and Rivera appeared in court together on three dates in 2010: January 12, 2010, March 23, 2010, and May 4, 2010. J2. For each of these dates, there should exist a Lombardi bill to Strumpf and accompanying memorandum detailing what transpired in court on that date. Given Strumpf's testimony that she kept Lombardi's bills through the end of the calendar year, those records must have been in existence on the date this lawsuit was commenced. Indeed, at her deposition held on January 11, 2011, Strumpf testified that they still existed and would be produced. *See supra* p. 8. At least as to these records, then, it is crystal clear that they were destroyed at a time when defendants "should have known that the evidence may be relevant to future litigation." *Kronisch v. U.S.*, 150 F.3d 112 at 126.

POINT 2

THE COURT SHOULD SANCTION DEFENDANTS' DESTRUCTION OF EVIDENCE BY
DIRECTING A DEFAULT JUDGMENT AGAINST THEM OR BY IMPOSING SUCH
LESSER SANCTION AS THE COURT FINDS WARRANTED

Plaintiff believes that the existing evidence clearly calls for the imposition of sanctions. However, should defendants, in their answering papers, persuade the Court that there are genuine issues of fact concerning their culpability in destroying records, the Court can and should hold a preliminary hearing. Such a hearing would give defendants an opportunity to explain the timing

and circumstances of their destruction of those records; and plaintiff would have an opportunity to cross-examine them on this issue.

Should the Court, with or without having held an evidentiary hearing, determine that defendants have failed to carry their burden of proving lack of bad faith under FRE 1004(1), the question of what sanction to impose is relatively straight-forward. The appropriate sanction under the FRE -- and, indeed, the only available sanction -- is to preclude defendants from offering secondary evidence at trial of the contents of the missing documents. Specifically, in this case, defendants should be precluded from presenting evidence in any form that Rivera did not provide documentation that USE had sued the wrong Mireya Rivera when Rivera claims she did, i.e. repeatedly from August 2009 to May 2010. Defendant Strumpf should also be precluded from offering secondary evidence of her contention that she directed Lombardi to give Rivera an extra copy of the motion papers in support of USE's motion for summary judgment.

The sanction question is more complex should the Court determine that plaintiff has carried her burden of proving spoliation. The district court has broad discretion in fashioning remedies for spoliation. *West v. Goodyear Tire & Rubber Co.,* 167 F.3d at 779. The remedy, moreover, must serve a three-fold purpose of (1) deterring other parties from engaging in spoliation, (2) placing the risk of erroneous judgment on the party creating it, and (3) restoring the injured party to the position she would otherwise have occupied. *West v. Goodyear Tire & Rubber Co.,* 167 F.3d at 779.

Permissible sanctions include outright dismissal of a plaintiff's case or judgment by default against an offending defendant. The Second Circuit has termed this a "drastic remedy," *West v. Goodyear Tire & Rubber Co.,* 167 F.3d at 780, one limited to cases in which there has

been "a showing of willfulness, bad faith, or fault on the part of the sanctioned party." *Id.* at 779.

But where the criteria are met, the sanction imposed should be:

> the most severe in the spectrum of sanctions provided by statute or rule must be
> available to the district court in appropriate cases, not merely to penalize those whose
> conduct may be deemed to warrant such a sanction, but to deter those who might be
> tempted to such conduct in the absence of such a deterrent.

*Valentine v. Museum of Modern Art*, 29 F.3d 47, 49-50 (2d Cir. 1994) *citing National Hockey*

*League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 643 (1976). *See also Agimal v. Mid*

*Island Mortg. Corp.*, 555 F.3d 298 (2d Cir. 2009) (dismissal available for repeated failure to

attend court-ordered depositions); *Jones v. NFTA*, 836 F.2d 731 (2d Cir. 1987) (same).

The criteria certainly seem to have been met in this case: The evidence very strongly

suggests, not that defendants carelessly failed to keep records or kept records but inadvertently

destroyed them, but that they have deliberately concealed or disposed of records they wanted

plaintiff not to see. Such conduct is a more serious threat to the integrity of the judicial system

than the open refusals to comply with discovery orders sanctioned in *Agimal* and *Jones, supra.*

Indeed, for such "willful destruction of discovery materials," one court has stated, "default

judgment has been deemed the only appropriate sanction under Rule 37." *Telectron, Inc. v.*

*Overhead Door Corp.*, 116 F.R.D. 107, 130 (S.D. Fla. 1987).

Even in the absence of willfulness, bad faith, or other fault, the ultimate sanction of

dismissal or default can be imposed where the destruction of evidence causes extraordinary

prejudice, denying to a litigant the ability to adequately defend, or prosecute, its case, such as

when the plaintiff disposes of an allegedly defective automobile without affording the defendant

an opportunity to examine it. *See Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944-45 (11th

Cir. 2005); *Silvestri v. GMC*, 271 F.3d 583, 593 (4th Cir. 2001).  The situation here is not

dissimilar.  This case turns on what transpired in nine unrecorded court sessions attended only by

Rivera and Lombardi.  Solid, objective, documentary evidence of those events existed, but has

been destroyed by the defendants.  Without those documents, Rivera, a non-English-speaking,

self-employed hairdresser from the Bronx, is left only with her word against that of two attorneys

-- both veterans of hundreds, if not thousands, of court proceedings.  There can be no doubt that

she has been seriously disadvantaged.

Sanctions short of outright dismissal or default are available to the Court, including (1)

ordering specified facts to be deemed established, (2) precluding the defendants themselves from

offering certain evidence at trial, or (3) instructing the jury that it *may* draw an adverse inference

against the party responsible for the missing evidence.  *See* 7 Moore's Federal Practice, Civil §

37.121.  A few words concerning these alternatives are in order:

The Court could enter an order deeming that plaintiff has established the facts she

contends the missing documents would prove or help to prove, *i.e.*, that plaintiff repeatedly gave

defendants documentation that she was not the Mireya Rivera indebted to USE and that

defendant Strumpf intentionally did not serve Rivera with notice of the summary judgment

motion she filed on August 12, 2009.  This would be nearly tantamount to a default judgment on

two of plaintiff's primary claims, but would still allow defendants to proceed to trial on their

affirmative defenses.

The Court could enter an order precluding defendants from offering evidence concerning

the contents of the missing documents.  This is essentially the same relief that plaintiff would be

entitled to under FRE Rules 1004 and 1008.  *See supra* p. 14-5.  Plaintiff believes this would be

an inadequate remedy because, in merely restricting defendants' proof, it does not compensate plaintiff for the loss of evidence she intended to use as part of her affirmative case.

Finally, an order permitting, but not requiring, the trier of fact to draw an inference adverse to defendants does not seem very practical. Such orders are really designed for jury cases. *Cf. Innis Arden Golf Club v. Pitney Bowes, Inc.*, 257 F.R.D. 334, 343 (D. Conn. 2009) (noting awkwardness of applying an adverse inference in a bench trial). If the Court is not fully persuaded that sanctions are warranted, it should simply deny the motion. If, however, the Court agrees that defendants' conduct has significantly disadvantaged plaintiff, it should fashion a meaningful remedy.

<u>CONCLUSION</u>

Plaintiff's motion for preclusion or other appropriate sanctions should be granted.

Dated: April 14, 2011
Bronx, New York

LEGAL SERVICES NYC – BRONX
By ___/s/ Anne Nacinovich_____
Anne Nacinovich (AN – 6586)
579 Courtlandt Avenue
Bronx, N.Y. 10451
Telephone: (718) 928-3739
Facsimile: (718) 402-7566
Attorneys for Plaintiff

NORTHERN MANHATTAN
IMPROVEMENT CORPORATION
By__/s/ James Baker_____
James M. Baker (JB-7115)
76 Wadsworth Ave
New York, N.Y. 10033
212-822-8347
Attorneys for Plaintiff